UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AL FATAH INTERNATIONAL NAVIGATION
COMPANY LIMITED,

                              Plaintiff,

                - against -

SHIVSU CANADIAN CLEAR WATERS TECHNOLOGY
(P) LTD., NEPTUNE CONTAINER LOGISTICS PVT
LTD., VIKING SHIPPING (CHENNAI) PVT LTD.,
EMIRATES SHIPPING LINE FZE, CARAVEL SHIPPING
SERVICES PVT. LTD., PRIDE SHIPPING COMPANY,
INTER CONTAINER CARGO LINE (COLOMBO),
CONTI HOLDING GmBH & CO KG, SCHLUTER KARL
GmBH & CO KG,

                              Defendants.

**09 Civ. 4856 (DC)**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
EMIRATE SHIPPING LINE FZE'S MOTION TO VACATE THE ATTACHMENT**

Plaintiff Al Fatah International Navigation Company Limited ("Plaintiff" or "Al Fatah") respectfully submits this memorandum of law in opposition to the motion by Defendants Emirates Shipping Line FZE ("Defendant" or "Emirates") to Vacate the Process of Maritime Attachment and Garnishment issued in this matter on May 22, 2009 and dismissal of the Verified Complaint as to Emirates.

## PRELIMINARY STATEMENT

Al Fatah satisfies all four requirements for the issuance of a Rule B attachment and the efforts of Emirates to vacate this attachment should be denied. As required, Al Fatah has set forth a valid, prima facie maritime claim for the loss and damage of its goods under a bill of lading. Emirates erroneously basis its motion to vacate on concepts of U.S. law whereas the resolution of the underlying dispute actually requires a highly fact-sensitive inquiry in a proceeding commenced under the laws of Saudi Arabia. Under Saudi Law, Emirates, along with the other defendants, is liable under the bill of lading at issue here for undertaking such actions to deprive Al Fatah of its rightful possession to its property in accordance with the standard conditions governing the bill of lading at issue. Al Fatah has brought an action against Emirates in Saudi Arabia to address the very issue of Emirates' liability for not delivering Al Fatah's Goods. Emirates was the issuer of an invalid (under Saudi law) second bill of lading covering the transport of Al Fatah's Goods in violation of its rights under an original bill of lading, and Emirates was the operator of the vessel, the M/V EMIRATES KANAKO (the "Vessel"), which sailed away from the discharge port with Al Fatah's property. Emirates' attempt to argue that there is no maritime contract because of a lack of privity between Al Fatah and Emirates is unsupported by Saudi law, and the attachment must be sustained.

In fact, the relationship between the two entities giving rise to liability is the exact issue being litigated in Saudi Arabia, and rests on issues of contractual interpretation, the relationship between a carrier of goods and the owner of those goods, and equitable considerations of fairness and justice under Sharia law.  In this proceeding, a valid maritime claim has been stated in the Verified Complaint as against Emirates, sufficient to maintain an attachment under Rule B.  Accordingly, the motion to vacate should be denied in all respects.[1]

## STATEMENT OF FACTS

As demonstrated in the Verified Complaint filed May 22, 2009 herein (the "Complaint" or "*Compl.*"), on March 7, 2008, Al Fatah purchased two (2) reverse osmosis units (the "Units") along with additional component parts (collectively the "Goods") from Shivsu Canadian Clear Waters Technology (P) Ltd, amongst other component parts.  *Compl* ¶ 15.  In connection with the purchase of the Goods, Al Fatah paid Shivsu $4,549,964.75.  *Compl.* at ¶ 16.  Thereafter, Al Fatah arranged to have the Goods shipped from Chennai, India to Dammam, Saudi Arabia in order to fulfill Al Fatah's contractual obligation to provide clean water pursuant to a separate agreement.  *Id.* at ¶¶ 17, 33.  A bill of lading dated September 29, 2008 was issued by Inter Container Cargo Line listing Shivsu as shipper and consignor, Banque Saudi Fransi (the "Bank") as consignee and Al Fatah as the Notify Party (the "Original Bill of Lading").  Pursuant to the Original Bill of Lading, Shivsu, as consignor and shipper, was required to ship the Goods from Chennai, India to the port of Dammam, Saudi Arabia on M/V CONTI JORK.  *Id*. at ¶ 18.  It is unclear as to whether the cargo was ever loaded aboard this vessel.  At all times, Al Fatah was

---

[1] Emirates additionally makes a claim for costs and attorneys' fees associated with bringing its motion to vacate, alleging, *inter alia*, that the action was commenced in bad faith.  This argument is without merit.  See section II below.

the rightful owner of the Goods.  Declaration pursuant to 28 U.S.C. §1746 of Hani M. Meer, dated June 10, 2009, (the "Meer Declaration" or "*Decl.*"), ¶ 6.  Upon endorsement of the Original Bill of Lading, Al Fatah became entitled to possession of the Goods.  *Compl.* at ¶ 18.

Thereafter, Emirates, acting in concert with the co-defendants to this action, took possession of the Goods and caused the Goods to be shipped by Emirates aboard the Vessel to a destination not specified in any of the three bills of lading at issue, and the Goods are not in the possession of the rightful owner, Al Fatah.  *Id.* at ¶ 21.  Emirates also was the issuer of an invalid second bill of lading, dated October 9, 2008 (the "Second Bill of Lading") which purported to ship the Goods to Dammam.  Additionally, Emirates was the operator of the Vessel which sailed away from the discharge port with the Goods, in breach of Al Fatah's rights.  To the best of Al Fatah's knowledge, Emirates <u>still</u> may have possession of the goods at this time.  *Decl.* ¶ 8.

On May 24, 2009, Al Fatah instituted proceedings in Saudi Arabia against the defendants to this action, including Emirates, for claims under Saudi and Sharia law stemming from a breach of the Original Bill of Lading (the "Saudi Proceeding").  *Decl.* at ¶ 5.  On May 22, 2009, Al Fatah brought this action under Rule B of the Supplemental Rules for Admiralty or Maritime Claims ("Rule B"), to obtain security for its claims against Emirates and the other defendants in aid of the Saudi Proceeding.

## ARGUMENT

### I

### PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER RULE B

A plaintiff carries its burden under Rule B by establishing four requirements: (1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no

statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Garner Smith Pty Ltd.*, 460 F.3d 434, 445, 2006 U.S. App. LEXIS 19302 (2d Cir. 2006). Once a plaintiff has met the four requirements articulated above, an attachment is upheld absent certain specific exceptions.

There is no dispute that the defendant is not found within the jurisdiction and that the defendant's property is subject to attachment in the jurisdiction. There is also no dispute that there is no statutory bar to the claim. Defendant only raises the issue of whether there is a valid maritime claim.

### A. Al Fatah's Prima Facie Admiralty Claim Against Defendant Emirates Derives From The Breach of a Bill of Lading

It has become established that the standard for determining whether a plaintiff has asserted a maritime claim is the "prima facie standard," rather than the more demanding "fair probability" or "reasonable grounds" standards. *Padre Shipping, Inc. v. Yong He Shipping*, 553 F.Supp.2d 328, 331-32 (S.D.N.Y. 2008). Under this standard, the Court looks to the Complaint to determine whether the plaintiff has alleged a valid admiralty claim against the defendant. *Ronda Ship Mgmt. v. Doha Asian Games Organising, Comm.*, 511 F.Supp.2d 399, 403 (S.D.N.Y. 2007).

The United States Supreme Court has unequivocally held that a bill of lading is a maritime contract so long as it requires substantial carriage of goods by sea. *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 27, 125 S. Ct. 385 (2004). Therefore, a breach of a bill of lading would fall under the Courts admiralty jurisdiction pursuant to Federal Rule of Civil Procedure 9(h) and any claim thereunder would be a maritime claim.

Here, Al Fatah arranged for the shipment of its goods from India to Saudi Arabia pursuant to a validly executed bill of lading which vests entitlement to the Goods in Al Fatah. Subsequent to the execution of the Original Bill of Lading, Emirates, along with the other defendants, effected a change in the parties of the Original Bill of Lading and issued a Second Bill of Lading causing the Goods to be shipped beyond the rightful possession of Al Fatah and in violation of its rights to the Goods under the Original Bill of Lading. *Comp.* ¶ 21. Accordingly, Al Fatah has articulated a valid maritime claim in the complaint.

      **B.**      **Defendant's Arguments Are Arguments On The Merits Which Are Unsuitable At This Stage Of A Rule E(4)(f) Hearing**

In a Rule E(4)(f) hearing, the plaintiff need not prove the underlying merits of the case. *Wilhelmsen Premier Marine Fuels v. UBS Provedores Pty. Ltd.*, 519 F. Supp. 2d 399, 404 (S.D.N.Y. 2007); *Ronda Ship Mgmt.*, 511 F.Supp.2d at 403. Further, the dispute herein regarding the legal nature of the relationship between the parties is a question going to the merits, and therefore not a question for resolution at a Rule E(4)(F) hearing. *Navison Shipping v. Yong He Shipping (HK) Ltd.*, 570 F.Supp.2d 527, 532 (S.D.N.Y. 2008)(denying a motion to vacate an attachment where there was a dispute as to liability based upon the relationship between the parties to a bill of lading because "those issues are best decided in a litigation that resolves the merits" and not a Rule E(4)(f) hearing); *Gulf Marine & Ind. Supplies, Inc. v. New Filipino Maritime Agencies, Inc.*, 2001 U.S. Dist. LEXIS 4475, *10-11 (E.D. La. Mar. 20, 2001) (denying a motion to vacate an attachment where the breach of contract was committed by the defendant's alleged agent).

Compellingly, where a factual dispute arises under foreign law in the context of a foreign proceeding, the resolution of that dispute is to be determined in the foreign proceeding and not in

5

this attachment action. *Louis Dreyfus Commodities Suisse, S.A. v. Ravennav*, 2009 U.S. Dist. LEXIS 13366, *10 (S.D.N.Y. 2009)(denying a motion to vacate); *Chiquita Int'l, Ltd. v. MV Bosse*, 518 F. Supp. 2d 589, 598 (S.D.N.Y. 2007)(denying a motion to vacate and stating that a court "need not, and should not" decide an issue properly left to the foreign proceeding).

Defendant argues that because it was not a party to the Original Bill of Lading, there is no privity between Al Fatah and Defendant and it is therefore "legally and factually impossible" for Defendant to have been in breach. Defendants Memorandum of Law in Support of Emirates Motion to Vacate, dated June 3, 2009 ("*Def. Brief* "), p. 5. Defendant, citing only U.S. law and ignoring Saudi law, claims Al Fatah has thus not asserted a prima facie maritime claim. *Def. Brief*, pg. 5.

Here, however, the relationship between the parties, and therefore any liability stemming from such relationship, is a legal and factual matter to be established under the laws of Saudi Arabia in the context of a currently pending proceeding properly brought in Saudi Arabia.

Moreover, under the laws of Saudi Arabia, Emirates is directly liable to Al Fatah. *Decl.* ¶¶ 14, 16. Under the laws of Saudi Arabia, principles of Sharia and Islamic law, the rules, laws, regulations, international conventions, and Saudi court decisions and marine customs, the issuer of a bill of lading is liable to the rightful owner of the goods being carried for loss or damage to those goods. *Decl.* at ¶ 11. Further, pursuant to the Islamic principle of "guardianship" and under Sharia law, a carrier entrusted with goods -- such as Emirates -- is liable to the owner of those goods for loss or damage. *Decl.* at ¶ 12. Emirates, as issuer of a bill of lading for the carriage of Al Fatah's goods, and being entrusted with the transport of those goods, is liable to Al Fatah for loss or damage to those goods. *Decl.* at ¶ 11.

6

Additionally, Al Fatah has pled in the Saudi Proceeding that Emirates knew that Al Fatah was the beneficiary under the Original Bill of Lading as evidenced by Emirates' reference to certain information only contained in the Original Bill of Lading.  *Decl.* at ¶ 13.  Under the laws of Saudi Arabia and in accordance with principles of Islamic and Sharia law, Emirates' knowledge that Al Fatah is the rightful owner of the goods under the Original Bill of Lading obliges and binds Emirates to Al Fatah pursuant to the Original Bill of Lading.  *Decl.* at ¶ 14.  Emirates participated in the breach of the Original Bill of Lading and as such, Emirates is liable under the laws of Saudi Arabia.  *Decl.* ¶ 7.  The extent that Emirates is liable under Saudi law is a decision to be made in the ongoing proceedings in Saudi Arabia.

## II

### DEFENDANT'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED

As Defendant accurately states, under the "American Rule," attorneys' fees are not ordinarily recoverable by the prevailing party.  *Hannah Bros. v. OSK Mktg. & Communs., Inc.*, 2009 U.S. Dist. LEXIS 34927, *18 (S.D.N.Y. 2009).  But, the court may still award attorneys' fees under the so-called "bad faith" exception.  *Hannah Bros.*, 2009 U.S. Dist. LEXIS 34927 at *19.  However, "the Second Circuit's expansive interpretation of Rule B" has created a landscape whereby the court "shares the responsibility for wrongful attachment" when it issues an order of attachment and therefore allows a plaintiff to merely take advantage of the procedural mechanisms of Rule B. *Id.* at *21.  Therefore, a plaintiff should not be held liable for attorneys' fees in the event the other party prevails.  *Id.*  Moreover, as the Second Circuit has noted, "a claimant's motive in filing an attachment is irrelevant."  *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 371 (2d Cir. 1995).

Defendant's attorneys' fees claim fails for two reasons. First, and most importantly, the "bad faith" exception does not apply to this case. The Rule B complaint in the instant action was brought in support of the Saudi Proceeding. As more fully described above, Al Fatah clearly has a colorable claim against Emirates under the laws of Saudi Arabia for a breach of the bill of lading and this action is brought in aid of that proceeding.

Second, even if Defendant's motion is granted, which it should not be, Emirates is still not entitled to recover attorneys' fees under the framework outlined in *Hannah Bros.* Al Fatah disclosed the facts in support of its attachment of Emirate's property and upon those facts, this court issued an order of attachment. Even if those facts prove to be inadequate and the attachment should never have been granted in the first place, the prevailing party can not recover attorneys' fees. *See Hannah Bros*, 2009 U.S. Dist. LEXIS 34927 at *21. Significantly, there was no bad faith on the part of Al Fatah in commencing this action and in seeking an attachment in the first place.

## CONCLUSION

For the foregoing reasons, the Motion to Vacate should be denied in its entirety, and Al Fatah should be granted such other and further relief as is just.

Respectfully submitted,

/s Bruce G. Paulsen
Bruce G. Paulsen (BP-9563)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York  10004
T:   (212) 574-1533
F:   (212) 480-8421
paulsen@sewkis.com
*Attorneys for Al Fatah International Navigation Company Limited*

SK 26578 0003 1001900

8