USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-31-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
AL FATAH INTERNATIONAL NAVIGATION   :
COMPANY LIMITED,                    :
                                    :
                  Plaintiff,        :   **MEMORANDUM DECISION**
                                    :
            - against -             :   09 Civ. 4856 (DC)
                                    :
SHIVSU CANADIAN CLEAR WATERS        :
TECHNOLOGY (P) LTD. et al.,         :
                                    :
                  Defendants.       :
                                    :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**         SEWARD & KISSEL LLP
                         Attorneys for Plaintiff Al Fatah
                         International Navigation Company Limited
                              By:  Bruce G. Paulsen, Esq.
                         One Battery Park Plaza
                         New York, New York  10004

                         CHALOS, O'CONNOR & DUFFY, LLP
                         Attorneys for Defendant Emirates Shipping
                         Line FZE
                              By:  Owen F. Duffy, Esq.
                                   George E. Murray, Esq.
                         366 Main Street
                         Port Washington, New York  10050

**CHIN, District Judge**

On May 22, 2009, plaintiff Al Fatah International Navigation Company Limited ("Al Fatah") filed a complaint against, inter alia, defendant Emirates Shipping Line FZE ("Emirates"), seeking an order of attachment pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure. The Court issued an order of attachment the same day. On June 3, 2009, Emirates moved, pursuant to Supplemental Rule E(4)(f), to vacate the attachment and dismiss the complaint. I held oral

argument on June 16, 2009 and reserved decision. For the reasons set forth below, Emirates' motion is denied.

## THE FACTS

The facts alleged in the verified complaint are assumed to be true. The Court only summarizes those facts relevant to Emirates' motion.

Al Fatah and Emirates are Saudi Arabian business entities. (Compl. ¶¶ 3, 7).

On March 7, 2008, Al Fatah purchased goods from Shivsu Canadian Clear Waters Technology (P), Ltd. ("Shivsu"), a Canadian company, for approximately $4.5 million, which represented 80% of the purchase price. (Id. ¶¶ 15-16). Under the agreement between Shivsu and Al Fatah, Shivsu was responsible for transporting the goods from Chennai, India to Dammam, Saudi Arabia. (Id. ¶ 17). On September 29, 2008, Shivsu entered into a bill of lading (the "Bill of Lading") with Banque Saudi Fransi to have Inter Container Cargo Line ship the goods. (Id. ¶ 18). It is undisputed that Emirates was not a party to the Bill of Lading. (6/16/09 Tr. at 10-11).

The goods, however, were never delivered to Al Fatah in Saudi Arabia. Instead, under circumstances that remain unclear, two more bills of lading were issued, which ultimately caused the goods to be diverted to an unknown location, possibly to Jebel Ali, United Arab Emirates. (Compl. ¶¶ 21-25; 6/16/09 Tr. at 8). Emirates issued one of those bills of lading, on October 9, 2008, and it is undisputed that Emirates was at one time in possession

of the goods. (Compl. ¶ 22; 6/16/09 Tr. at 3). Al Fatah was not a party to either of these subsequent bills of lading.

Al Fatah commenced this Rule B action on May 22, 2009, and on May 24, 2009, it commenced litigation in Saudi Arabia against the defendants in this action, including Emirates. (Id. ¶ 31; Meer Decl. ¶ 5).

**DISCUSSION**

Al Fatah's complaint is predicated on the breach of the Bill of Lading, but the parties dispute whether such a claim is valid against Emirates. Emirates argues that because there is no privity between Emirates and Al Fatah -- a point Al Fatah does not dispute -- there is no legal theory under which Emirates could be liable to Al Fatah for the loss of its goods.

Al Fatah concedes that, were U.S. law to govern the question, it would have no legal recourse against Emirates. Al Fatah argues, however, that Saudi Arabian law governs, and notes that Al Fatah and Emirates are currently litigating the merits of this case in Saudi Arabia. Al Fatah has submitted an affidavit of a Saudi attorney stating that Emirates could be liable to Al Fatah under what is known as the "guardianship rule." (Meer Decl. ¶ 12).[1] Under the guardianship rule, the carrier of goods can be held liable to the owner of the goods for any loss or damage, even without privity of contract. (Id. ¶¶ 11-14).

---

[1] Unsurprisingly, Emirates has submitted a letter from a Saudi Arabian attorney disputing this conclusion. (6/16/09 Abuouf Ltr.).

Resolution of Emirates' motion turns on whether the Court should apply U.S. or Saudi Arabian law to determine whether, for purposes of Rule B, the claim is facially valid. I conclude that Saudi Arabian law governs, and, as Al Fatah has stated a facially valid claim against Emirates under Saudi Arabian law, Emirates' motion to vacate the attachment is denied.

### A. Applicable Law

To obtain a maritime attachment, a plaintiff must, in addition to satisfying the filing and service requirements of Supplemental Rules B and E, show that

> 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Only the second element is disputed in this case: whether Al Fatah has asserted a "valid prima facie admiralty claim." This dispute raises at least two issues: (1) what standard applies in determining the existence of a "valid prima facie admiralty claim"; and (2) what law applies in making that determination?

### 1. What Is a "Valid Prima Facie Admiralty Claim?"

Following the Second Circuit's decision in Aqua Stoli, "the majority of courts in this district have held that the standard for determining whether a plaintiff has asserted a 'valid prima facie admiralty claim' is the 'prima facie standard'

-4-

rather than the more demanding 'fair probability' or 'reasonable grounds' standards." Padre Shipping, Inc. v. Yong He Shipping, 553 F. Supp. 2d 328, 331-32 (S.D.N.Y. 2008); accord Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979 (KMW), 2006 U.S. Dist. LEXIS 95870, at *15 (S.D.N.Y. 2006) (holding that Aqua Stoli "implies that the 'probable cause' or 'reasonable grounds' standard is improper"). In other words, a "valid prima facie admiralty claim" need not even meet the fair probability or reasonable grounds standard. That much is clear. Still, there is a lack of precision as to what the "prima facie standard" requires, particularly in light of the coupling of the word "valid" with the phrase "prima facie." See Peter Dohle Schiffahrts KG v. Sesa Goa, Ltd., No. 08 Civ. 10277 (SAS), 2009 U.S. Dist. LEXIS 60664, at *11 n.47 (S.D.N.Y. July 15, 2009) (noting "division within this district over the question of what constitutes a 'valid prima facie admiralty claim'"). The words themselves and the case law, however, provide guidance.

First, the court must determine that the claim is an admiralty claim. This requirement is relatively uncontroversial, as an "admiralty claim" is simply one that sounds in admiralty. See Ronda Ship Mgmt. v. Doha Asian Games Organising Comm., 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (noting that, on Rule E motion, "the Court's inquiry focuses on whether plaintiff has alleged a claim cognizable in admiralty").[2] Here, the parties do not

---

[2] In some instances determining whether a claim sounds in admiralty can be difficult. See, e.g., Trireme Mar. Co. v. Breakbulk Marine Servs., 09 Civ. 645 (DC), 2009 U.S. Dist. LEXIS

-5-

dispute that Al Fatah has asserted a claim that sounds in admiralty, and indeed Al Fath's claim is based on Emirates' carriage of Al Fathah's goods by sea. (Compl. ¶¶ 21-22; 6/16/09 Tr. at 3).

Second, the court must determine that the claim is facially sound, that is, that the claim is, on its face and without investigation, sound or well-founded. This conclusion derives from the word "valid," which implies that the claim must be sound or well-founded. See Webster's New Riverside University Dictionary 1274 (3d ed. 1994) (defining "valid" as, inter alia, "[w]ell-grounded" and "sound"); Black's Law Dictionary 1548 (8th ed. 2004) (defining "valid" as, inter alia, "[l]egally sufficient"). Although there are many cases holding, however, that the court should not conduct a trial on the merits at this stage and that a plaintiff need not prove its claims to obtain an attachment order, see, e.g., Transportes Navieros Y Terrestes v. Fairmount Heavy Transp. N.V., No. 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260, at *12 (S.D.N.Y. 2007) ("[M]aritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing."), still, some sort of inquiry into the merits is required to ensure that a defendant's funds are not attached arbitrarily. See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d

---

19771, at **4-8 (S.D.N.Y. 2009) (discussing whether claim for breach of settlement agreement sounds in admiralty). The touchstone of the inquiry is whether the claim has "'reference to maritime service or maritime transactions.'" Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 24 (2004) (quoting N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125 (1919)).

263, 272 (2d Cir. 2002) (noting that Rule E(4)(f) "is designed to satisfy the constitutional requirement of due process"); Fed. R. Civ. P. Supp. Rule E, adv. committee's note (1985 amendment) (noting that Rule E was "designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings").[3] The word "valid," however, is modified by the phrase "prima facie," which Black's defines as "[a]t first sight," Black's Law Dictionary 1228 (8th ed. 2004), and which limits the inquiry. Hence, at a Rule E hearing, the court must determine, without investigation or a hearing, whether the plaintiff has stated a claim that is facially sound or well-founded. Here, the parties sharply dispute whether Al Fatah has asserted a valid prima facie claim against Emirates.

**2. What Law Applies?**

Determining whether the plaintiff has pled a facially valid admiralty claim becomes even more difficult where, as here,

---

[3] This view finds support in a recent decision of the Second Circuit. In <u>Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transportation, N.V.</u>, a case decided in June of this year, the Second Circuit held that "a court may assess preliminarily the reasonableness of plaintiff's damages claim when setting a security under Rule E(5) and may weigh this and other equitable considerations when evaluating whether good cause exists to reduce a security under Rule E(6)." No. 07 Civ. 3929, 2009 U.S. App. LEXIS 13394, at *42 (2d Cir. June 23, 2009). If the court can conduct an inquiry into the reasonableness of plaintiff's claimed damages in determining the amount of an attachment, then surely the court can conduct some sort of inquiry to determine if an attachment should issue in the first instance.

the substantive law underlying the claim is foreign. The issue then is not only what sort of an inquiry as to the validity of the claim is required, but also what law governs that inquiry.[4] There is a split of authority in this District on the issue, and the Second Circuit has not ruled on it.

At least one judge in this District has held that foreign law governs the inquiry because the "existence vel non of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law," and where the substantive law is foreign, the court should consider that foreign law. Sonito Shipping Co., Ltd. v. Sun United Mar., Ltd., 478 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2007) (Haight, J.); see also Precious Pearls, Ltd. v. Tiger Int'l Line Pte Ltd., No. 07 Civ. 8325 (JGK), 2008 U.S. Dist. LEXIS 58453, at **5-7 (S.D.N.Y. July 31, 2008) (applying, with no discussion, English law).

At least three other judges have rejected Judge Haight's decision in Sonito, and concluded that only U.S. law applies in determining whether a plaintiff has stated a valid claim. See, e.g., Euro Trust Trading S.A. v. Allgrains U.K. Co.,

---

[4] There does not appear to be any dispute that U.S. law governs whether the court has admiralty -- in other words, subject matter -- jurisdiction. The subject matter jurisdiction of federal courts is limited and supplied by federal statutes; it could not possibly be supplied by foreign law. Cf. Euro Trust Trading S.A., 2009 U.S. Dist. LEXIS 64663, at **7-8 ("Whether a case falls within the scope of the federal Supplemental Rules for Maritime and Admiralty Claims is manifestly a question of United States federal law calling for the interpretation of procedural rules adopted by the United States. It does not matter how the case would be characterized under the law of some other country, even if that country's law provides the rules governing the substance of the claim.").

-8-

No. 09 Civ. 4483 (GEL), 2009 U.S. Dist. LEXIS 64663, at **7-8 (S.D.N.Y. July 24, 2009) (dicta); Kulberg Fins., Inc. v. Spark Trading D.M.C.C., No. 09 Civ. 792 (RWS), 2009 U.S. Dist. LEXIS 51531, at **8-9 (S.D.N.Y. June 17, 2009); Harley Mullion & Co. v. Caverton Marine Ltd., No. 08 Civ. 5435 (BSJ), 2008 U.S. Dist. LEXIS 101313, at **5-6 (S.D.N.Y. 2008) (dicta).

The judges who conclude that only U.S. law governs a Rule B issue have made two principal points in support of that conclusion. First, they reason that applying foreign law would be akin to a consideration of the merits, in a manner inappropriate to a Rule E(4) hearing. As Judge Jones explained,

> If, in order to comply with the requirements set forth in Aqua Stoli, a claim must be valid under the substantive law that will govern the underlying action, parties initiating or responding to a Rule E(4) challenge would be routinely required to litigate issues of foreign law and courts would have to probe into the merits of the underlying claim. This sort of detailed examination is inappropriate at a Rule E(4) hearing as it would undermine the prima facie standard and is at odds with the limited inquiry contemplated by Aqua Stoli.

Harley Mullion & Co., 2008 U.S. Dist. LEXIS 101313, at **5-6. Second, they point out that federal law generally governs procedural issues in federal court, and Rule B is a procedural rule. See T&O Shipping v. Lydia Mar Shipping Co. S.A., 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006) ("Rule B is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law.") (emphasis added); see also Reibor Int'l, Ltd. v. Cargo

Carriers (KACZ-CO.), Ltd., 759 F.2d 262, 265 (2d Cir. 1985) (holding, in different context, that "[f]ederal law generally governs questions as to the validity of Rule B attachments") (emphasis added).

I respectfully disagree that federal law governs all aspects of a maritime attachment E inquiry. Instead, I conclude that the court must conduct a conflict of laws inquiry to determine what law governs the inquiry into whether there exists a facially valid admiralty claim. Where the conflict of laws inquiry requires the application of foreign law, the court should apply foreign law.

Rule B is undoubtedly a procedural rule, but Rule B itself does not provide the basis for determining the existence of a valid prima facie admiralty claim. Rather, as Judge Haight explained, Rule B supplies the procedure by which a valid prima facie admiralty claim can give rise to a writ of maritime attachment, see Sonito Shipping Co., Ltd., 478 F. Supp. 2d at 536, but the existence of a valid prima facie claim turns on substantive law. Where the substantive law underlying the claim is foreign, it would make no sense to determine the claim's prima facie validity under U.S. law.

This conclusion is not inconsistent with Aqua Stoli's holding that a Rule E hearing should not go to the merits of the claim. Even if the contours of the Rule E inquiry are unclear, it cannot reasonably be disputed that the Court must do more than review the complaint, ensure that the defendant's name is spelled

-10-

correctly, and then sign the writ of attachment, thereby authorizing the freeze of the defendant's assets (often for hundreds of thousands dollars or more).

An inquiry based on foreign law would not necessarily be more searching of the merits than the same inquiry conducted under U.S. law. While the inquiry would undoubtedly be more difficult -- as foreign law may not be readily discernible -- it need not necessarily be any more rigorous than the same inquiry conducted under U.S. law.

To determine what law governs, the court should conduct a conflict of laws analysis (unless, of course, there is an agreement with an express choice-of-law provision). Under federal common law,[5] the rule "is to apply the law of the jurisdiction having the greatest interest in the litigation." In re Koreag, Controle et Revision S.A., 961 F.2d 341, 351 (2d Cir. 1992). The goal of the inquiry is to consider "the various contacts each jurisdiction has with the controversy, and determine which jurisdiction's laws and policies are implicated to the greatest extent." Id. Where the conflict of laws inquiry favors application of a foreign country's law, the court should apply foreign law. This conflict of laws inquiry would not

---

[5]   In a diversity case the district court applies the conflict of law analysis of the forum state. See In re Koreag, Controle et Revision S.A., 961 F.2d 341, 350 (2d Cir. 1992). Rule B cases are not diversity cases, however, but rather are brought under a federal statute, 28 U.S.C. § 1333. In federal question cases, "federal principles should guide our consideration of which jurisdiction's substantive law applies." Id.

require a trial or hearing on the merits. Rather, it is the type of threshold issue courts resolve all the time.

For these reasons, I conclude that U.S. law governs whether a plaintiff has asserted an admiralty claim, and the substantive law governs whether such a claim is valid. To determine what substantive law governs, the court must conduct a conflict of laws analysis.

### B. Application

There is no contract between Al Fatah and Emirates at all, much less one with a choice-of-law provision. Thus, I must conduct a conflict of law analysis to determine what law governs.

Both Al Fatah and Emirates are Saudi Arabian entities, the goods at issue were bound for Saudi Arabia, the goods were evidently in Saudi Arabia at some point, and an action is currently pending between Al Fatah and Emirates in Saudi Arabia. Saudi Arabia clearly has the greatest interest in this litigation, and therefore its law applies to Al Fatah's substantive claim.

Under Saudi Arabian law, I conclude that Al Fatah has a facially valid claim. It has submitted an affidavit from a Saudi Arabian attorney stating that, under a principle of Saudi Arabian law known as guardianship, Emirates may be liable to Al Fatah for damage to the goods. (Meer Decl. ¶ 12). This claim is on its face sound, as it is logical that if Emirates had possession of Al Fatah's goods, and the goods never arrived at their destination, Emirates could be liable to Al Fatah. Emirates

submitted a letter from a Saudi Arabian attorney in response, but that letter does not even address Al Fatah's guardianship theory of liability. Accordingly, I conclude that Al Fatah has stated a facially valid claim under Saudi Arabian law.[6]

### CONCLUSION

For the foregoing reasons, Emirates' motion to vacate the May 22, 2009 attachment is denied.

SO ORDERED.

Dated:   New York, New York
         August 31, 2009

                                    _____
                                    DENNY CHIN
                                    United States District Judge

---

[6] On June 25, 2009, after Emirates' motion was fully briefed and the Court had heard oral argument, Emirates submitted a letter to the Court arguing an independent basis for vacatur. The letter does not identify any new evidence that was previously unavailable to Emirates, and I therefore decline to consider it. See Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp. 2d 330, 350 (S.D.N.Y. 2009) (refusing to consider argument made after close of briefing and oral argument); cf. Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) (holding that "new arguments may not be made in a reply brief").